UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE J. SOTO, | ) | CIVIL ACTION NO. 4:21-CV-1531 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Jose J. Soto, an adult individual who resides in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

II.    BACKGROUND & PROCEDURAL HISTORY

On June 10, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15).  In this application, Plaintiff alleged he became disabled on September 29, 2018, when he was 40 years old, due to the following conditions: asthma, atrial fibrillation, high blood pressure, high cholesterol, two right knee surgeries, lower back issues, traumatic brain injury, anxiety, depression, post-traumatic stress disorder (PTSD), auditory and visual hallucinations, anger issues, low frustration tolerance, racing thoughts, and poor sleep. (Admin. Tr. 16, 21, 24). Plaintiff alleges that the combination of these conditions affects his ability to walk, stand, lift more than forty pounds, bend, understand, retain information, tolerate crowded spaces, and sleep. (Admin. Tr. 21). Plaintiff has at least a high school education. (Admin. Tr. 24). Plaintiff has no past relevant work. (Admin. Tr. 24).

Plaintiff's application was denied at the initial level of administrative review on September 10, 2019, and upon reconsideration on November 26, 2019. (Admin. Tr. 15). On January 28, 2020, Plaintiff requested an administrative hearing. (Admin. Tr. 15).

On March 1, 2021, Plaintiff, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Daniel Balutis (the

"ALJ"). (Admin. Tr. 15, 25). On March 11, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 25). On May 15, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 241).

On July 13, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On September 6, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, p. 1). As relief, Plaintiff requests that the Court

> Reverse and set aside the Commissioner's final decision; or [i]n the alternative, remand this cause for further proceedings consistent with the Commissioner's regulations and Circuit law[;] . . . . [a]ward attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, if plaintiff is the prevailing party; [s]tay any filing deadline for filing a fee petition for an award of attorney's fees pursuant to 42 U.S.C. § 406(b) after final judgment until such time as past-due benefits are determined by the Commissioner and counsel is in receipt of the Notice of Award, and then award attorney's fees pursuant to 42 U.S.C. § 406(b) upon filing of the fee petition; and [o]rder such other relief as this court deems just.

(Doc. 1, pp. 1-2).

On November 4, 2021, the Commissioner filed an Answer. (Doc. 12). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 12, p. 2). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 17), and Plaintiff's Reply (Doc. 18) have been filed.  This matter is now ripe for decision.

## III.    STANDARDS OF REVIEW

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
      SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

---

[1] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 11, 2021. (Admin. Tr. 25).

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are

consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

In his statement of errors, Plaintiff raises the following issues:

1.   The ALJ erroneously failed to include the uncontroverted limitation to 1-2 step tasks within the residual functional capacity assessment; the ALJ erroneously failed to discuss or explain his basis for failing to include the uncontroverted limitation to 1-2 step tasks.

2.   The ALJ's residual functional capacity is not supported by substantial evidence as the residual functional capacity exceeds the limitations of all medical opinions of record.

(Doc. 16, p. 6).

    A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his March 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2022. (Admin. Tr. 17). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 29, 2018, (Plaintiff's alleged onset date) and March 11, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17, 25). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): depression and post-traumatic stress disorder (PTSD). (Admin. Tr. 17). The ALJ also found that, during the relevant period, Plaintiff had the following medically determinable non-severe impairments: alcohol dependence and tetrahydrocannabinol (THC) dependence. (Admin. Tr. 18). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> [H]e could frequently perform all postural maneuvers except climb ramps and stairs and stoop. He could tolerate frequent interaction with supervisors, and occasional changes in routine work setting.

(Admin. Tr. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work because Plaintiff had no past relevant work. (Admin. Tr. 24).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations:  assembler, small products II (any industry) (DOT# 739.687-030 with 100,000 positions nationally); mail clerk (clerical) (DOT# 209.687-026 with 75,000 positions nationally); and cleaner, housekeeping (any industry) (DOT# 323.687-014 with 500,000 positions nationally. (Admin. Tr. 25).

B.     WHETHER THE ALJ PREJUDICIALLY ERRED BY NOT LIMITING, AND NOT
       EXPLAINING HIS FAILURE TO LIMIT, PLAINTIFF'S RESIDUAL FUNCTIONAL
       CAPACITY TO ONE- TO TWO-STEP TASKS

At the initial administrative level, state agency psychological consultants, Dr.

Amanullah and Dr. Galdieri, opined that Plaintiff "is able to meet the basic mental

demands to complete 1-2 step tasks on a sustained basis, despite the limitations from

the psychological impairment." (Admin. Tr. 104, 118). The ALJ found that these

opinions, and the assessment that Plaintiff "is able to meet the basic mental demands

to complete 1-2 step tasks on a sustained basis," were "persuasive" and "generally

supported by and consistent with the medical evidence of record. (Admin. Tr. 23).

The limitation to 1-2 step tasks, however, was not incorporated in the ALJ's RFC

assessment. (Admin. Tr. 20).

Plaintiff argues that the ALJ's RFC assessment, and ultimate conclusion on

the issue of disability, is not supported by substantial evidence because the ALJ

improperly rejected the limitation to 1-2 step tasks without adequate support or

explanation. Specifically, Plaintiff contends:

> As stated above, both Dr. Amanullah and Dr. Galdieri concluded that
> Soto was "able to meet the basic mental demands to complete 1-2 step
> tasks on a sustained basis." (Tr. 104, 118). These opinions are
> uncontroverted and no medical opinion suggests a greater level of
> functioning. Additionally, the ALJ found these opinions to be
> "persuasive" and found them to be "generally supported by and
> consistent with the medical evidence of record." (Tr. 23).

Page 11 of 27

Despite the fact that both Dr. Amanullah and Dr. Galdieri clearly and unequivocally opined that Soto would be limited to "1-2 step tasks", the ALJ failed to include – or discuss his failure to include – this limitation within the residual functional capacity assessment. (Tr. 20).

Notably, the ALJ was aware that these opinions limited Soto to "1-2 step tasks" as he discussed this limitation when analyzing the opinions of Drs. Amanullah and Galdieri. (Tr. 23). However, the ALJ did not explain why such a limitation should not be included within the residual functional capacity assessment since these opinions were found to be persuasive and "generally supported by and consistent with the medical evidence of record." (Tr. 23).

This Court has routinely held that even a limitation to "simple, routine tasks" does not properly account for a limitation to "one or two step tasks." *See, e.g., Beltran*, Civ. A. 3:17-cv-00715-SES. Thus, it is unclear as to how the ALJ properly accounted for the uncontroverted limitations in Dr. Amanullah's opinion or Dr. Galdieri's opinion when the ALJ failed to include *any* limitations related to task complexity – let alone the limitation to "1-2 step tasks" contained within those opinions.

This leads us to a related error. Not only did the ALJ fail to include such a limitation in the residual functional capacity assessment, but the ALJ did not explain his failure to include this limitation to 1-2 step tasks. An ALJ's failure to articulate the failure to include such a limitation is cause for remand. Magistrate Judge Schwab notes in the Beltran decision that this Court has routinely remanded where the ALJ "failed to include, or to provide an adequate explanation as to why he decided to exclude, a limitation to one or two-step tasks." *Beltran*, Civ. A. 3:17-cv-00715 at * 2-3 (citing *Hurrey v. Colvin*, 1:14-CV-02408, slip op. at 19-21 (M.D. Pa. Jan. 28, 2016) (Mehalchick, M.J.) (Report & Recommendation), adopted, 1:14-CV-02408, slip op. (M.D. Pa. Feb. 2, 2016)). This is particularly true when such a limitation is uncontroverted as it is here.

The requirement that an ALJ explain his failure to include a limitation to 1-2 step tasks derives from the ALJ's duty to adequately explain the

evidence that he rejects or to which he affords lesser weight. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Thus, as this Court held in *Beltran*, *Hurrey*, and more recently, *Podunajec*, an ALJ must explain the failure to include a limitation to one or two step tasks in the residual functional capacity assessment. Failure to do so leaves this ALJ's analysis unreviewable.

Soto's case is even more problematic than *Podunajec*, *Beltran*, or *Hurrey*. In each of these cases, the ALJ at least included a limitation to "simple tasks" or "simple, routine tasks." Here, the ALJ did no such thing. The ALJ included no limitation to "simple tasks" and included no limitation regarding task complexity of any kind. Thus, the error in Soto's case is even more egregious than that in *Podunajec*, *Beltran*, or *Hurrey*. As the Court concluded that each of these cases required remand, it is axiomatic that the facts of Soto's case require remand.

This error cannot be harmless. As explained by Magistrate Judge Saporito in *Podunajec*, the distinction between "simple" and "one and two step" tasks could potentially impact a vocational expert's testimony and the ALJ's ultimate conclusion in this case. *Podunajec*, Civ. A. No. 3:19-cv01938-JFS at *17 (*citing Beltran*, 3:17-CV-00715, slip op. at 2-3; *Hurrey*, 1:14-CV-02408, slip op. at 19-21); *see also Chrupcala v. Heckler*, 829 F. 2d 1269, 1276 (When the ALJ's denial of benefits is not based upon an accurate hypothetical, reversal is the most appropriate disposition of the case.) This error cannot be harmless.

(Doc. 16, pp. 8-11).

In response, the Commissioner argues that the failure to include a limitation

to one to two step tasks is harmless in this case because, even if it is an error, Plaintiff

can still do one of the occupations identified by the ALJ. Specifically, the

Commissioner contends:

> Plaintiff first argues that because the ALJ found the opinions of State
> agency psychological consultants to be persuasive yet did not include
> their limitation to one to two step tasks, this requires remand (Pl. Br. 6).
> However, as a job cited by the VE can be performed even with a
> limitation to one to two step tasks, this omission has no bearing on the
> outcome of the case. Therefore, this Court should affirm.

> It is not enough for Plaintiff to simply point out an error. Instead, the
> burden is on Plaintiff to show that the alleged error would have an effect
> on the outcome ALJ's decision. *See Perkins v. Barnhart*, 79 F. App'x
> 512, 515 (3d Cir. 2003) (finding harmless error where the ALJ's
> mistake "would have no effect on the ALJ's decision"); *Shinseki v.
> Sanders*, 556 U.S. 396, 409 (2009) (explaining that Plaintiff, as the
> moving party, bears the burden of showing that any legal error would
> have changed the Commissioner's decision). Here, Plaintiff cannot
> establish that the ALJ's omission of a limitation to one to two step tasks
> would have changed the ultimate outcome, and remand on this issue
> would be futile.

> Importantly, this Court recently ruled on a case with a nearly identical
> fact pattern in *Shingler v. Kijakazi*, 2022 WL 273426 (M.D. Pa. Jan. 28,
> 2022). In Shingler, it was argued that because the State agency
> consultants found that Mr. Shingler "would be expected to understand
> and remember simple, one and two step instructions," the ALJ's failure
> to include that limitation in his RFC assessment despite finding it
> persuasive or explain its omission required remand. *Shingler*, 2022 WL
> 273426, at *11.

> This Court rejected this argument, finding harmless error. *Shingler*,
> 2022 WL 273426, at *13. Specifically, this Court noted that the VE
> identified the job of "cleaner/housekeeper," which per the DOT is a job
> with a GED Reasoning Development Level 1. *Shingler*, 2022 WL
> 273426, at *12. As noted by this Court, GED Reasoning Development
> Level 1 "requires that an employee be able to '[a]pply commonsense

understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job.'" *Id.* (citing DOT, Appendix C 1991 WL 688702). This Court reasoned that "[t]he plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than one- or two-step tasks" and that "other courts have concluded that 'a limitation to one to two-step tasks is consistent with GED Reasoning Development Level 1." *Shingler*, 2022 WL 273426, at *12 (internal citations omitted). As such, this Court held that "even if a limitation to one or two step instructions were included in the ALJ's RFC assessment, Plaintiff would still be able to perform the occupation of cleaner/housekeeping," a job which the VE testified existed in significant numbers in the national economy. *Id.*

The facts of this case are essentially identical to *Shingler*, and this Court should likewise affirm. Here, State agency psychological consultants found that Plaintiff "is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis, despite the limitations from the psychological impairment" (Tr. 104, 118). The ALJ found this persuasive but did not incorporate that limitation in his RFC (Tr. 23). However, exactly like in Shingler this was harmless error, as the VE found that Plaintiff had the RFC to perform the job of "cleaner," a job that is GED Reasoning Development Level 1 with 500,000 positions in the national economy (Tr. 25, 68); *se*e Cleaner, Housekeeping, DOT 323.687- 014. Thus, just as remand was not required in Shindler, remand is also not required here.

(Doc. 17, pp. 9-12).

In reply, Plaintiff argues:

The Commissioner's harmless error argument is based on the fact that the ALJ concluded that Soto can perform an occupation with a GED Reasoning Level of 1 and that a limitation to one or two step tasks would not preclude the performance of the occupation. The Commissioner's argument is an impermissible post hoc rationalization. *Michigan v. EPA*, 135 S. Ct. 2699, 2710 (2015) (enforcing the "the

foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

The Commissioner's harmless error argument requires this Court to review vocational evidence in the first instance. Doing so is inconsistent with the function of the District Court. *Meloni v. Colvin*, 109 F. Supp. 3d 734, 741 (M.D. Pa. 2015) (citing *Christ the King Manor, Inc. v. Sec'y US. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("The Court should not be interpreting vocational evidence in the first instance; that is the realm of a vocational expert.").

The Commissioner specifically requests this Court to review the requirements of the DOT to determine whether such a limitation would be harmless. This is prohibited. Because the vocational expert was not asked about a limitation to "one or two step tasks", there is no vocational expert testimony regarding this limitation. In such a case, the proper remedy is to remand.

The United States Court of Appeals for the Third Circuit has held in "the clearest of terms" that a hypothetical question must include all of a claimant's functional limitations which are supported by the record. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical that omits limitations is defective, and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez*, 372 F.3d at 553-55.

While this alone is enough to establish that this error cannot be harmless, the Court in Beltran provides more specific reasoning. The Beltran decision collects cases from several districts and circuits to show that when a limitation to "one or two step tasks" is erroneously omitted from a residual functional capacity and/or hypothetical question to the vocational expert, such an error is harmful. *See also Podunajec v. Saul*, Civ. A. No. 3:19-cv01938-JFS at *16 (M.D. Pa. Dec. 11, 2020); *Hurrey v. Colvin*, 1:14-CV02408, slip op. at 19-21 (M.D. Pa. Jan. 28, 2016) (Report & Recommendation) (finding that omission of a limitation to 1-2 step tasks could potentially impact a

Page 16 of 27

VE's testimony and the ALJ's ultimate conclusion), adopted, 1:14-CV-02408, slip op. (M.D. Pa. Feb. 2, 2016) (Order); *Harden v. Commissioner of Social Security*, No. 13-906, 2014 WL 4792294, at *3-5 (W.D. Pa. Sept. 24, 2014) (finding that "a limitation regarding the complexity of tasks and instructions that a claimant can perform may be different from a limitation regarding the routineness or repetitiveness of a job."); *McGriff v. Colvin*, No. 3:16-CV-911, 2017 WL 3142336, at *3 (D. Conn. July 25, 2017) (collecting cases).

Indeed, where the omitted limitation refers to "one or two step tasks", Courts have nearly unanimously agreed that such a limitation is harmful. The Commissioner's argument fails because the Commissioner failed to appreciate the difference between "simple, routine tasks" and "one or two step tasks." Beltran and the cases discussed therein clearly discuss and explain the difference between the two limitations. *Beltran*, Civ. A. 3:17-cv-00715-SES.

Indeed, Magistrate Judge Saporito explained that such an error cannot be harmless. *Podunajec v. Saul*, Civ. A. No. 3:19-cv-01938-JFS at *17 (M.D. Pa. Dec. 11, 2020) (Saportio, M.J.). As explained by Magistrate Judge Saporito, the distinction between "simple" and "one and two step" tasks could potentially impact a vocational expert's testimony and the ALJ's ultimate conclusion in this case.

The facts in Soto's case are more egregious than those in *Podunajec*. In Soto's case, the ALJ did not even include a limitation to "simple tasks". The vocational expert was not provided an accurate hypothetical question. When the ALJ's denial of benefits is not based upon an accurate hypothetical, reversal is the most appropriate disposition of the case. *Chrupcala v. Heckler*, 829 F. 2d 1269, 1276 (3d Cir. 1987); *see also e.g., Lam v. Astrue*, 2011 U.S. Dist. LEXIS 53229, at *14 (E.D. Pa. Mar. 31, 2011)(finding that until the ALJ forecloses the possibility that the VE could have changed his testimony if the ALJ had included accurate limitations in the hypothetical question, the VE's answer to the hypothetical as posed cannot be said to constitute substantial evidence upon which the ALJ can properly rely.).

Furthermore, since Plaintiff submitted his initial brief on this matter, this Court issued yet another decision adopting the reasoning of *Podunajec*, *Beltran*, and *Hurrey* and remanding for additional consideration: *Simon v. Kijakazi*, 1:20-cv-02064-MCC (M.D. Pa. Mar. 18, 2022) (Carlson, M.J.). In Simon, Magistrate Judge Carlson thoroughly analyzed the *Podunajec* decision, "[found] Magistrate Judge Saporito's opinion instructive", and concluded that the ALJ's lack of explanation in omitting a limitation to 1-2 step tasks was cause for remand. This further establishes that this error cannot be harmless.

To be clear, with Magistrate Judge Carlson's March 18, 2022 decision in Simon, the cases cited above establish that four of the Magistrate Judges in this Court have found this error to be harmful:

- Magistrate Judge Schwab in *Beltran*, Civ. A. No. 3:17-cv-00715;

- Magistrate Judge Saporito in *Podunajec*, Civ. A. No. 3:19-cv01938;

- Magistrate Judge Carlson in *Simon*, Civ. A. No. 1:20-cv-02064; and,

- Chief Magistrate Judge Mehalchick in *Hurrey*, Civ. A. No. 1:14-CV-02408.

While the above cases establish harm, there is another way to understand why this error cannot be harmless. When a claimant has nonexertional limitations, unless the Commissioner is relying upon administrative notice, the Commissioner cannot establish that there are jobs in the national economy without the production of additional vocation evidence such as a vocational expert or other similar evidence, such as a learned treatise. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d. Cir. 2000); *see also* AR 01-1(3).

Here, there is no question that Soto has non-exertional limitations. The ALJ did not rely on administrative notice. Thus, according to Sykes, the Commissioner cannot meet her burden at Step Five unless relying upon other vocational evidence such as a vocational expert or learned treatise. *Sykes*, 228 F.3d at 273. However, here the vocational expert's

testimony was based on an inaccurate hypothetical question. Thus, this testimony does not constitute substantial evidence upon which the ALJ can rely. *Ramirez*, 372 F.3d at 553-55. As a result, the Commissioner is left without any evidence supporting her position. The Commissioner cannot sustain her burden at Step Five.

Plaintiff has clearly established harm through *Beltran*, *Hurrey*, *Podunajec*, and now, *Simon*. The Commissioner's argument relies exclusively on impermissible post hoc rationalizations. The Court should not entertain such post hoc rationalizations or engage in analysis of vocational evidence in the first instance. Remand is required to determine if a limitation to 1-2 step tasks would impact vocational expert testimony.

(Doc. 18, pp. 2-8).

I am partially persuaded by Plaintiff's argument. To the extent Plaintiff argues that the ALJ improperly excluded the limitation to 1-2 step tasks without adequate support or explanation, I agree. I am not, however, persuaded that this error requires remand in this case.

In his supporting brief and reply, Plaintiff offers several arguments as to why the ALJ's error—failing to incorporate a limitation to 1-2 step tasks—requires remand in this case.

First, Plaintiff argues that this type of error *cannot* be harmless in any case, based on this Court's prior holdings in: *Beltran v. Berryhill*, No. 3:17-CV-715 (M.D. Pa. Feb. 20, 2018), ECF No. 22; *Podunajec v. Saul*, No. 3:19-CV-1938, 2020 WL 7319779 (M.D. Pa. Dec. 11, 2020); *Simon v. Kijakazi*, No. 1:20-CV-2064, 2022 WL

828935 (M.D. Pa. Mar. 18, 2022); and *Hurrey v. Colvin*, 1:14-CV-2408 (M.D. Pa. Jan. 28, 2016), ECF No. 16, report and recommendation adopted by 2016 U.S. Dist LEXIS 202824 (M.D. Pa. Feb. 2, 2016). Plaintiff is correct that the facts of these cases bear some similarity to this one. However, the issue raised in this case— whether the ALJ's error is harmless because Plaintiff would still be able to perform one of the occupations cited by the ALJ in support of his conclusion—is not addressed in any of the four cases.

In *Beltran*, like in this case, the ALJ credited a medical opinion assessing that the claimant "would be expected to understand and remember simple, one and two-step instructions." *Beltran*, No. 3:17-CV-715, ECF No. 22 p. 2. Unlike this case, however, the Commissioner did not argue that the error was harmless because the occupations identified by the ALJ had a *GED* reasoning level of 1. Instead, the Commissioner argued that minor inconsistencies in *SVP* level were not egregious enough to undermine an ALJ's decision.

In *Podunajec*, like in this case, an ALJ failed to include a limitation to one and two step tasks within the RFC, despite affording great weight to the medical opinion containing that limitation. 2020 WL 7319779 at *4. Unlike this case, however, in *Podunajec* the ALJ concluded that the claimant could engage in her past relevant work as a "counter attendant." Neither the VE testimony nor the ALJ

Page 20 of 27

decision identified a DOT number for that job. Although the Commissioner cited to cases involving GED reasoning level conflicts, she did so in support of an argument that there was no distinction between an RFC for "simple, routine tasks" and one for "one and two-step tasks." The Court rejected that argument. The Commissioner did not, however, argue that the error was harmless because the occupations identified by the ALJ had a *GED* reasoning level of 1.

In *Simon*, like in this case, a physician limited the claimant to the performance of simple 1 or 2-step tasks, and the ALJ credited that physician's opinion without incorporating the 1 or 2-step task limitation in the RFC assessment. 2022 WL 828935 at *8-10. The Court found that the ALJ's failure to explain why the limitation was excluded required remand. Unlike this case, however, the Commissioner did not argue that the error was harmless because the occupations identified by the ALJ had a *GED* reasoning level of 1.

In *Hurrey*, like in this case, a physician limited the claimant to the performance of simple 1 or 2-step tasks, and the ALJ credited that physician's opinion without incorporating the 1 or 2-step task limitation in the RFC assessment. In *Hurrey*, the claimant argued that, had the ALJ incorporated the 1 or 2-step task limitation, he would have been unable to perform occupations with a GED reasoning level of 2. The Court declined to make a finding on that issue, but found that a

restriction to "simple" tasks may allow for a higher reasoning level than 1 or 2-step tasks. Unlike this case, the Commissioner did not argue that the error was harmless because the occupations identified by the ALJ had a *GED* reasoning level of 1.

Having reviewed each of the cases Plaintiff cited in his brief, I am not persuaded that they are dispositive of the issue that an ALJ's failure to incorporate a 1 or 2-step limitation in the RFC always requires remand. None of the cases cited in Plaintiff's brief address the argument raised in this case.

Next, Plaintiff argues that remand is required under *Sykes v. Apfel*, 228 F.3d 259, 266-271 (3d Cir. 2000) because the ALJ was required to consult a vocational expert. I am not persuaded by this argument. In this case, the ALJ *did* consult a vocational expert and posed the following hypothetical question:

> [ALJ] Okay. Thank you, sir. I have a single hypothetical for you. For purposes of this hypothetical, I would like for you to assume an individual, same age, vocational background, and education as the claimant. I would like you to assume an individual restricted to a light exertional range, with the following additional restrictions. Posturally, this person would frequently climb ladders, ropes, and scaffolds; frequently balance; frequently kneel, crouch, and crawl. This person would only have frequent contact with supervisors, and there would be occasional changes in the routine work setting. Based upon this hypothetical, is there any work this person could do in the national economy?

> [VE] I would offer the following representative positions in the national economy. The first would be an assembler of small products. It's light, unskilled, SVP of two. The DOT code is 739.687-030, and there's 100,000 nationally. I would indicate

mail sorter. Light, unskilled, SVP of two. The DOT code for that, 209.687-026. 75,000 nationally. And I would also indicate a cleaner. Light, unskilled, SVP of two. DOT code is 323.687-014, and there's 500,000 nationally.

(Doc. 13-2, p. 69).

Turning the Commissioner's argument, I must now determine whether the error alleged—failure to incorporate a limitation to 1 or 2-step tasks in the RFC and ALJ hypothetical—is harmless in this case. In social security appeals, an error is considered "harmless" where it would not change the outcome of the ALJ's decision. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Coy v. Astrue,* No. 8-1372, 2009 WL 2043491 at *14 (W.D. Pa. Jul. 8, 2009) ("No principle of administrative law "require[s] that we convert judicial review of agency action into a ping-pong game" in search of the perfect decision.").

In the *Dictionary of Occupational Titles* ("DOT"), the general educational development of each occupation is described. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702. The GED scale is composed of three divisions, but only one is relevant here—reasoning development. *Id.* In occupations with a reasoning development level of 1,

satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

The plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than 1 or 2-step tasks. As explained in *Ferrebee v. Kijakazi*:

> Courts—including this one—have found that a limitation to one-to-two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018); *Henderson v. Colvin*, 643 Fed. App'x 273, 277 (4th Cir. 2016) (per curiam); *Rounds v. Comm'r SSA*, 807 F.3d 996, 1003 (9th Cir. 2015); *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1210-11 (W.D. Wash. 2012); *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012); *see also Shingler v. Kijakazi*, Civil Action No. 4:20-CV-01344, 2022 U.S. Dist. LEXIS 16307, 2022 WL 273426, at *12 (M.D. Pa. Jan. 28, 2022); *Brown v. Kijakazi*, Civil Action No. 4:20-CV-00836, 2021 U.S. LEXIS 195357, 2021 WL 4711242, at *7 n.4 (M.D. Pa. Oct. 8, 2021).

No. 3:20-cv-02188, 2022 U.S. Dist. LEXIS 56229, at *6 (M.D. Pa. Mar. 28, 2022). Courts have also noted that a GED Reasoning Level of 2 *may* conflict with a limitation to 1 or 2-step tasks, and typically remand where a there is a conflict involving a limitation to 1 or 2-step tasks and the only occupations cited by a VE and ALJ contain a GED reasoning level 2. *Id.*

In this case, two of the occupations identified by the VE and cited by the ALJ (small products assembler DOT #739.687-030 and mail sorter DOT #209.687-026) *could* be inconsistent with a limitation to 1 or 2-step tasks because those occupations have a GED reasoning level of 2. No party disputes that these occupations *could* be inconsistent with a limitation to 1 or 2-step tasks. One of the occupations (cleaner DOT #323.687-014), has a GED Reasoning Level of 1. Thus, if the 1 or 2 step task limitation was included in the RFC assessment, Plaintiff would still be able to perform this one job.

Furthermore, the VE testified that there are approximately 500,000 cleaner jobs nation-wide. In the Third Circuit, if a plaintiff can perform 35,000 jobs in the national economy, and "nothing suggests [the] jobs . . . are unusually clustered in 'relatively few locations' far from the [] region where [the plaintiff] lives," a significant number of jobs exist which the plaintiff can do, and the plaintiff will be found not disabled. *Lamoureux v. Comm'r of Soc. Sec. Admin.*, No. 21-1677, 2021

Page 25 of 27

WL 5860738, at *2 (3d Cir. Dec. 10, 2021) (quoting 20 C.F.R. § 404.1566(b)). Thus, there are a significant number of cleaner jobs.

Therefore, even *if* the ALJ had included a limitation to 1 or 2-step tasks and relied on the same VE testimony already in this record, the result of the ALJ's decision, would be the same.

Plaintiff also argues that remand is required because the ALJ failed to explain why the limitation was not incorporated in the RFC. This too is an error, but for the same reasons is harmless in this case.

Accordingly, I am not persuaded that remand is required because the ALJ failed to incorporate the 1 or 2-step tasks limitation in the RFC assessment. Although this, and the failure to explain, were errors, there is no likelihood that it would change the outcome in this case.

[The next page contains the Conclusion]

V.    CONCLUSION

Accordingly, Plaintiff's request for remand will be Denied as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of Kilolo Kijakazi.

(3)    Aa appropriate Order will be issued.

Date: September 20, 2022                    BY THE COURT

                                            _s/William I. Arbuckle_
                                            William I. Arbuckle
                                            U.S. Magistrate Judge